1

2

3

4

5
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
6

7   KELLY LEE BOARD,
         Plaintiff,

8                                          No.  1:14-CV-3165-RHW

    v.
9
                                           **ORDER GRANTING**
    CAROLYN W. COLVIN,                      **DEFENDANT'S MOTION FOR**
10  Acting Commissioner of Social          **SUMMARY JUDGMENT**
    Security,
11
         Defendant.
12

13       Before the Court are the parties' cross-motions for summary judgment, ECF

14  Nos. 24 & 27.  Attorney Joseph L. Koplin represents Kelly Lee Board ("Plaintiff

15  or "Claimant"), and Special Assistant United States Attorney Catherine Escobar

16  represents Defendant Commissioner of Social Security (the "Commissioner").

17  Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g),

18  of the Commissioner's final decision, which denied his application for Disability

19  Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 423.

20  After reviewing the administrative record (including the newly submitted

    evidence) and briefs filed by the parties, the Court is now fully informed. For the

    **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
    **JUDGMENT ~ 1**

reasons set forth below, the Court grants Defendant's Motion for Summary

Judgment, and directs entry of Judgment in favor of Defendant.

## I.    Jurisdiction

Plaintiff filed an application for Disability Insurance Benefits on August 2,

2011. AR 170-178.  The alleged onset date of disability was November 26, 2010.

AR 172. Administrative Law Judge ("ALJ") Scott R. Morris found the Plaintiff to

be not disabled within the meaning of the Social Security Act on January 22, 2013.

AR 32-45.

Plaintiff appealed the decision to the Appeals Council, and during the time

the appeal was pending, Plaintiff submitted additional medical evidence that

included additional information regarding Plaintiff's right upper extremity

limitations, mental health issues, and a diagnosis of thoracic outlet compression.

ECF No. 25-1, Ex. A-C. The Appeals Council upheld the ALJ's decision on

August 13, 2014, and the ALJ's decision became the final decision of the

Commissioner. AR 1-6.

Plaintiff filed the present action for judicial review on October 20, 2014.

ECF No. 1. Defendant filed a Motion to Dismiss for lack of timely filing of judicial

review on January 28, 2015. ECF No. 13. This Court denied Defendant's Motion

to Dismiss on May 4, 2015, finding the Plaintiff made a reasonable showing that

he did not receive the notice of the Appeal's Council within the presumed five day

1  window. ECF No. 18. Accordingly, Plaintiff's claims are properly before this

2  Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

4      The Social Security Act defines disability as the "inability to engage in any

5  substantial gainful activity by reason of any medically determinable physical or

6  mental impairment which can be expected to result in death or which has lasted or

7  can be expected to last for a continuous period of not less than twelve months."  42

8  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

9  under a disability only if the claimant's impairments are of such severity that the

10  claimant is not only unable to do his previous work, but cannot, considering

11  claimant's age, education, and work experience, engage in any other substantial

12  gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

13  1382c(a)(3)(B).

14      The Commissioner has established a five-step sequential evaluation process

15  for determining whether a claimant is disabled within the meaning of the Social

16  Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

17  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

18      **Step one** inquires whether the claimant is presently engaged in "substantial

19  gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

20  activity is defined as significant physical or mental activities done or usually done

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

**Step two** asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

**Step three** involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

**Step four** examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

**Step five** shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

1    *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

2    1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

3    whether the Commissioner's findings are supported by substantial evidence, "a

4    reviewing court must consider the entire record as a whole and may not affirm

5    simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

6    *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

7    F.2d 498, 501 (9th Cir. 1989)).

8            In reviewing a denial of benefits, a district court may not substitute its

9    judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

10   1992).  If the evidence in the record "is susceptible to more than one rational

11   interpretation, [the court] must uphold the ALJ's findings if they are supported by

12   inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

13   1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

14   2002) (if the "evidence is susceptible to more than one rational interpretation, one

15   of which supports the ALJ's decision, the conclusion must be upheld").

16                        **IV.    Statement of Facts**

17           The facts of the case are set forth in detail in the transcript of proceedings,

18   and only briefly summarized here. Plaintiff was forty-two years old at the alleged

19   date of onset. AR 43. Plaintiff attended high school through the tenth grade. AR

20   63. He attended some vocational training in diesel mechanics, but most of his skills

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

were learned through on-the-job training. AR 64. He has past work experience as a diesel mechanic and janitorial supervisor. AR, 43, 268.

Plaintiff had a torsion bar fall on his right arm while working as a diesel mechanic in September 2009. AR 58. He continued to work until November 2010 when he was laid off due to lack of available transmission work (his specialty) in the company. *Id.*

Plaintiff alleges he is disabled due to right hand impairment and right shoulder impingement. ECF No. 24 at 2. He additionally has offered evidence of mental health issues that were not presented to the ALJ, including depression. ECF No. 24 at 2; 25.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from November 26, 2010, the alleged date of onset, through the date of the decision. AR 44.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 26, 2010, per 20 C.F.R. § 404.1571 *et seq.* AR 37.

**At step two**, the ALJ found Plaintiff had the following severe impairments: right hand impairment status post cubital tunnel release and carpal tunnel release and right shoulder impingement, per 20 CFR § 404.1520(c). AR 37.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 38.

At **step four**, relying on the vocational expert's testimony, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), except that he can lift and carry ten pounds occasionally and frequently, occasionally crawl, and frequently climb ramps and stairs. He is unable to climb ladders ropes or scaffolds, or to perform jobs requiring the use of the right upper extremity. There are no limitations on the use of his non-dominant left upper extremity. He also must avoid even moderate exposure to extreme cold and must avoid concentrated exposure to vibration and hazards. AR 39.

ALJ Morris determined that Plaintiff is unable to perform any past relevant work as a diesel mechanic (defined as heavy, skilled work) or a janitorial supervisor (defined as medium, skilled work). AR 43.

At **step five**, the ALJ found that, after considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 43-44. These include: surveillance system monitor (sedentary, unskilled), usher (light, unskilled), and gate guard (light, semi-skilled). AR 44.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

## VI.     Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 24 at 1-2. More specifically, Plaintiff alleges that: (1) the Appeals Council erred by failing to consider the post-decision medical evidence; (2) the ALJ's credibility assessment is fatally flawed because it did not consider the post-decision medical evidence; (3) the ALJ erred by failing to consider the side effects of gabapentin on Plaintiff; and (4) the ALJ did not pose complete hypotheticals to the vocational expert because the hypotheticals failed to consider the post-decision medical evidence. *Id*. Plaintiff requests the Court set aside the ALJ's decision and remand for further development of the record. *Id*.

## VII.     Discussion

### A. The new medical evidence does not require remand.

A district court may remand a case to the ALJ to consider new evidence when the new evidence is material to determining disability, and the plaintiff had good cause for having failed to produce the new evidence earlier. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); 42 U.S.C. § 405(g) (2015). To be material, the evidence must "bear 'directly and substantially' on the matter in dispute." *Mayes,* 276 F.3d at 462 (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Further, evidence is material only if there is a reasonable

possibility that the new evidence would have changed the outcome of the ALJ's decision. *Mayes*, 276 F.3d at 462; *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1381 (9th Cir. 1984). To demonstrate good cause, the claimant must show that the new evidence was previously unavailable. *Mayes*, 276 F.3d at 463 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). Good cause is not shown simply by obtaining reports more favorable to the claimant following the Commissioner's final decision. *Mayes*, 276 F.3d at 463.

On April 7, May 12, and July 31, 2013, during the period in which his appeal was pending, Plaintiff provided new medical evidence to the Appeals Council. ECF No. 25 at 2. This new evidence included: chart notes from Dr. Matthew Robon, M.D., the Plaintiff's treating orthopedic surgeon; a shoulder evaluation by Dr. Michael Sailer, M.D.; an upper extremity physical capacities evaluation by physical therapist Lee Caton, PT; a thoracic outlet evaluation by Dr. Mark Ombrellaro, M.D.; and a psychiatric evaluation by Dr. C. Donald Williams, M.D. ECF No. 25-1, Ex. A-C. All of the records were dated after the ALJ's decision on January 22, 2013. *Id.*

### 1. Plaintiff's mental health complaints are not material and Plaintiff fails to show good cause for not providing the evidence sooner.

Both the transcripts of the hearing and the record lack evidence of potentially disabling mental health problems at or before the ALJ's hearing. In his

ruling, the ALJ specifically noted, "At the hearing, the claimant denied having any mental health issues. Consistent with his testimony, the medical evidence does not document any diagnosis of mental impairment from an acceptable medical score. Accordingly, the record does not establish any medically determinable mental impairment." AR 38.  Plaintiff denied any mental health issues when asked directly during the hearing. AR 67. The only mention of potential mental health issues during the hearing was depression as a possible side effect to medicine, but the issue was never expounded upon. AR 68. There was no indication the depression was considered severe or disabling. *Id.*  The records of Dr. Robon noted "a history of depression since 2012," but did not indicate Plaintiff received any treatment at any time for depression. AR 356-58. Moreover, Dr. Robon only treated Plaintiff for physical issues with his right upper extremity, not psychiatric issues. *Id.*

"An ALJ cannot be responsible for diagnosing a problem that a claimant decides not to pursue." *Mayes*, 276 F.3d at 263. Plaintiff's mental health was never brought up as a problem until after the hearing. As in *Mayes*, Plaintiff's "arguments would be more persuasive if [his mental health] had indeed been at issue in the ALJ Hearing, even though not diagnosed until later." *Id.* at 462.

Also as in *Mayes*, there is no explanation of why the Plaintiff did not seek or could not have obtained a mental health evaluation prior to the hearing. *See id.* at 463. ("If Mayes' back problems were disabling, she should have sought a

1   diagnosis of or treatment for her back problems earlier.") If Plaintiff's mental

2   health had been a potentially disabling factor, he should have sought treatment, as

3   the record is clear that he had regular contact with physicians. Further, when

4   directly asked about his disabling impairments at the hearing, Plaintiff stated he

5   was only alleging those with his right upper extremity. AR 67. In sum, neither

6   Plaintiff nor the record ever indicated that his mental health was a disabling factor

7   prior to or at the ALJ hearing, which was focused exclusively on his right upper

8   extremity impairments.

9       Plaintiff fails to show these mental health records are material or to provide

10  good cause for not presenting them sooner. The Court does not find an error in the

11  final decision of the Commissioner based on these mental health records.

12  **2. The new medical evidence pertaining to Plaintiff's right upper**

13  **extremity symptoms is not material because there is not a reasonable**

14  **possibility that the new evidence would have changed the outcome of**

15  **the case.**

16      Plaintiff also fails to demonstrate that the new evidence regarding his right

17  upper extremity is material. The ALJ already accounted for significant limitations

18  with the right upper extremity in his residual functional capacity analysis, AR 39,

19  and the remaining information on pain is subjective and may be properly

20  discounted if the claimant is found to have limited credibility. *See Tommasetti v.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

1    *Astrue*, 533 F.3d 1035 (9th Cir. 2008).  The ALJ's properly explained his decision

2    to question the credibility of Plaintiff. AR 39-43.

3        Further, the residual functional capacity determined by the ALJ is

4    appropriate in light of Plaintiff's limitations, and the hypothetical posed to the

5    vocational expert was not incomplete. The residual functional capacity

6    appropriately accounted for Plaintiff's right upper extremity limitations. AR 39-43.

7    In fact, some of the new evidence actually supports the ALJ's finding that Plaintiff

8    is capable of light work. *See infra* p. 19.

9        For these reasons, the Court finds no error with the final decision of the

10    Commissioner, even in light of the new medical evidence related to Plaintiff's right

11    upper extremity.

12        **a.  The new medical evidence would not alter the assessment of**

13             **Plaintiff's credibility.**

14        An ALJ engages in a two-step analysis to determine whether a claimant's

15    testimony regarding subjective symptoms is credible.  *Tommasetti,* 533 F.3d at

16    1039. First, the claimant must produce objective medical evidence of an underlying

17    impairment or impairments that could reasonably be expected to produce some

18    degree of the symptoms alleged.  *Id.* Second, if the claimant meets this threshold,

19    and there is no affirmative evidence suggesting malingering, "the ALJ can reject

20

1    the claimant's testimony about the severity of [his] symptoms only by offering

2    specific, clear, and convincing reasons for doing so." *Id.*

3            In weighing a claimant's credibility, the ALJ may consider many factors,

4    including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

5    reputation for lying, prior inconsistent statements concerning the symptoms, and

6    other testimony by the claimant that appears less than candid; (2) unexplained or

7    inadequately explained failure to seek treatment or to follow a prescribed course of

8    treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

9    1284 (9th Cir.1996). When evidence reasonably supports either confirming or

10   reversing the ALJ's decision, the Court may not substitute its judgment for that of

11   the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).

12           ALJ Morris determined that Plaintiff's "medically determinable impairments

13   could reasonably be expected to cause some of the alleged symptoms." AR 39.

14   However, the ALJ also found that Claimant's statements regarding the limiting

15   effects are not entirely credible. *Id.* The ALJ cited multiple specific, clear, and

16   convincing reasons for the decision that Plaintiff's statements regarding his

17   symptoms were not fully credible. AR 39-43.

18           The Court does not find that the ALJ erred in determining Plaintiff's

19   subjective complaints and alleged limitations were not fully persuasive. Even if the

20

1    new medical evidence would be added in, the ALJ's reasoning for Plaintiff's

2    credibility determination remain valid for the reasons below.

3        **i.  Plaintiff's gap in treatment**

4        Plaintiff was injured in a work-related accident in September 2009, AR 276,

5    and his alleged onset date of disability was in November 2010. AR 192. The ALJ

6    noted in his decision that "despite allegations of debilitating symptoms, the record

7    does not document any subsequent medical evaluation for the alleged right upper

8    extremity symptoms until October 2011, almost one year after the alleged onset of

9    date of disability." AR 40. Moreover, the date of injury was over one year prior to

10   the alleged onset date. AR 192, 276.

11       A claimant's statements may be less credible when treatment is inconsistent

12   with the level of complaints or a claimant is not following treatment prescribed

13   without good reason. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

14   Plaintiff offers no reasons for the delay in treatment, yet he states that his pain was

15   chronic and debilitating. In his Reply, Plaintiff states he "may simply have lacked

16   insurance coverage." ECF No. 28 at 6. This type of conjecture is unhelpful. There

17   are numerous reasons that *may* account for the treatment gap, but, there is nothing

18   offered to demonstrate that the ALJ should not have used this treatment gap as one

19   of the factors to determine Plaintiff was less than fully credible.

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15**

1      **ii.    Inconsistency between the medical record and Plaintiff's**

2              **testimony**

3          When Plaintiff was finally treated in October 2011 by Dr. Mary Pellicer,

4   M.D., the record demonstrates that he did have some swelling and decreased range

5   of motion, but his pain level was noted as only a 3 or 4 out of 10. AR 302. This is

6   not consistent with the debilitating pain Plaintiff asserts. In addition, Dr. Pellicer

7   noted in this visit that Plaintiff had no restrictions standing, walking, or sitting, and

8   his restrictions were limited only to that he should not carry or lift with his right

9   hand.[1] AR 306. The ALJ determined that this visit, the first after the lengthy gap in

10  treatment, did not corroborate Plaintiff's allegation of debilitating symptoms since

11  November 2010. AR 40.

12         The ALJ also cited to subsequent medical records that did not corroborate

13  Plaintiff's allegations of debilitating symptoms. AR 40-41. The records of Dr.

14  Robon, Plaintiff's orthopedic surgeon, indicate problems with his right upper

15  extremity, AR 357-377, but improvement following carpal tunnel and cubital

16  tunnel release surgery in April 2012. AR 363-365. Physical therapy records for this

17  period support the ALJ's conclusion that Plaintiff was improving. AR 331-335.

18  //

19  //

20

---

[1] This is consistent with the residual functional capacity assigned to
Plaintiff. AR 39.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16**

### iii.    Plaintiff's daily activities

Also important to the ALJ in determining Plaintiff's credibility was the level of independence Plaintiff demonstrated in his daily activities. AR 41. The ALJ stated that Plaintiff "reported a level of functioning that exceeds what one would expect from an individual with the extent of the claimant's alleged symptoms." *Id.* The ALJ pointed to Plaintiff's ability to perform self-care activities and household chores, such as laundry and loading and unloading the dishwasher. *Id.*; AR 241-242, 302.

In addition, Plaintiff appears to enjoy a variety of recreation. He is able to play with his children, attend their school functions, walk his dog, and go fishing and boating. AR. 61-62, 302. The ALJ took particular note of Plaintiff's ability to fish for trout as inconsistent with Plaintiff's alleged level of impairment. AR 41, 60-61.

While one does not need to be "utterly incapacitated" to be eligible for benefits, *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), the record, including Plaintiff's own testimony, regarding his daily and recreational activities support the ALJ's determination regarding his credibility.

### iv.    Plaintiff's testimony regarding his ability to work

The ALJ also limited Plaintiff's credibility due to his testimony regarding his ability to work. Plaintiff testified that his debilitating symptoms began

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

following the work injury, AR 58, but his onset of disabling symptoms was not until he was laid off in November 2010. AR 192. Plaintiff admitted that he was not laid off because of his injury, but because there "wasn't enough volume of work to keep a transmission mechanic around." AR. 58. He confirmed that he could have continued to do the work, had he not been laid off for economic reasons. AR 59. The ALJ found this testimony to undermine the Plaintiff's credibility regarding the level of his symptoms. AR 41.[2]

**b.  The ALJ took into account the Plaintiff's limitations when assessing his residual functional capacity and therefore did not present an incomplete hypothetical to the vocational expert.**

When determining Plaintiff's residual functional capacity, the ALJ took into account the medical evidence that demonstrates limitations with Plaintiff's right upper extremity. AR 39-42. The residual functional capacity is limited to light work, and it specifically states Plaintiff "is unable to perform jobs requiring the use of the right upper extremity…" AR 39. This was included in the hypothetical presented to the vocational expert. The jobs in the national economy that were determined for Plaintiff were all in the categories of "light" or "sedentary." AR 44.

---

[2] Further, Plaintiff acknowledged in his testimony that he was receiving unemployment, which corroborates the ALJ's determination that Plaintiff was not as limited as he claimed. AR 55. This act of holding himself out as available to work implies he is able to work, despite his allegations of debilitating pain. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

1    The inclusion of the new medical evidence would not alter the residual

2    functional capacity. The new medical evidence (excepting the mental health

3    diagnoses, which was addressed previously, *see supra* p. 10-12) supports light

4    work with a bar on use of the right upper extremity. In fact, the notes for Dr.

5    Robon and Mr. Caton (his physical therapist) actually support this finding.

6    The February 2013 records of Dr. Robon, Plaintiff's treating physician,

7    indicate improvement. ECF No. 25-1, Ex. A, p. 2. Dr. Robon stated, "his position

8    is dramatically improved however he is still 'sensitive.'" *Id*. In his ruling, the ALJ

9    gave significant weight to Dr. Robon's earlier medical opinion. AR 42. The ALJ

10   noted the pattern of progress reported by Dr. Robon. AR 363-366. The older notes

11   even specified that Dr. Robon expected the Claimant would return to work, and

12   encouraged light duty. *Id.* Nothing in these new notes contradict this previous

13   assertion by the doctor, and they support the overall pattern of improvement. ECF

14   No. 25-1, Ex. A, p. 2.

15   Also in February 2013, physical therapist Lee Caton stated that Plaintiff's

16   current physical capabilities included work "performed at the light work category

17   with bilateral hand use and medium work category with isolated left hand only use

18   during the evaluation on a full-time basis…" ECF No. 25-1, Ex. A, p. 4. While Mr.

19   Caton acknowledges that Plaintiff cannot work as a diesel mechanic, the ALJ

20   already found that Plaintiff was unable to perform this previous work. AR 43.

1    Plaintiff offers treatment notes from Dr. Ombrellaro that diagnose him with

2    thoracic outlet compression; however, there is no statement that these limitations

3    would prevent light work, particularly if the light work did not include use of the

4    right upper extremity. ECF No. 21-1, Ex. C. In light on the contemporaneous

5    recommendations from his physician and his physical therapist that he can perform

6    light work, the Court does not find that there is a reasonable possibility that the

7    diagnosis of thoracic outlet compression by Dr. Ombrellaro would alter the ALJ's

8    ruling. ECF No. 25-1, Ex. C, p. 4.

9    The ALJ did not dispute that Plaintiff has limitations with his right upper

10   extremity, and he accounted for these in his calculation of Plaintiff's residual

11   functional capacity. AR 39. Further, the allegations that his chronic pain from the

12   right upper extremity are disabling were appropriately limited by the ALJ's

13   findings regarding the Plaintiff's credibility. *See supra* p. 13-18. Plaintiff fails to

14   demonstrate how this new medical evidence would have a reasonable possibility of

15   changing the ALJ's findings on the residual functional capacity or Plaintiff's

16   credibility.

17   **B. The ALJ did not err by failing to consider the side effects of gabapentin**

18   **on Plaintiff.**

19   Without objective medical evidence that a medication's side effects are

20   limiting to a claimant, an ALJ must evaluate the subjective complaints by doing a

1    standard credibility evaluation. *See Thomas v. Barnhart,* 278 F.3d 947, 960 (9th

2    Cir. 2002). Plaintiff's allegations about the side effects of gabapentin are based

3    entirely on his subjective complaints. (These include allegations that the

4    medication takes his pain from an "11" to a "7" and that the medication must be

5    used in conjunction with a heating pad. ECF 24 at 10.) As discussed previously,

6    the ALJ did not err in his assessment of Plaintiff's credibility. *See supra* p. 13-18.[3]

7    Thus, there is no error regarding the alleged side effects of gabapentin.

8                                 **VIII.  Conclusion**

9           Based on the foregoing, the Court finds the Commissioner's decision is free

10   of legal error and supported by substantial evidence. Therefore, Defendant's

11   Motion for Summary Judgment is granted.

12          Accordingly, **IT IS HEREBY ORDERED**:

13          1.  Plaintiff's Motion for Summary Judgment, **ECF No. 24**, is **DENIED.**

14          2.  Defendant's Motion for Summary Judgment, **ECF No. 27,** is

15   **GRANTED.**

16          3. The District Court Executive is directed to enter judgment in favor of

17   Defendant and against Plaintiff.

18   //

19   _____

20   [3] Technically, Plaintiff does not actually speak to side effects in his
     briefing. Rather, he discusses the length of time it takes for the gabapentin
     to work, and the need for a heating pad. Nevertheless, this is strictly based
     on subjective information, and the ALJ offered sufficient reasons for
     limiting Plaintiff's credibility.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**

1        **IT IS SO ORDERED.** The District Court Executive is directed to enter this

2   Order, forward copies to counsel and **close the file**.

3        **DATED** this 31st day of December, 2015.

4

5                         *s/Robert H. Whaley*
                         ROBERT H. WHALEY
6                   Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 22**